HUBERT SCOVILLE AND OTHERS *vs.* HENRY J. MATTOON AND OTHERS.

Hartford Dist., March T., 1887. PARK, C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, Js.

A school society, in 1808, voted "that *J. F.* and whomsoever doth at this time, or shall at any future time, occupy his house, they with their respective lists shall be set to the first district." At that time the house of *J. F.* was a quarter of a mile from the line of the district, and stood upon a farm, separated from the district by an intervening strip of land. Held that the vote operated to annex the house and the farm connected with it to the first district.

The law, at that time, gave school societies full power to establish and alter school districts. Under this authority they had power to annex to school districts territory not contiguous to them.

Scoville *v.* Mattoon.

For more than fifty years the persons owning and living upon the farm had paid taxes as members of the district, their children had attended the school of the district, and they had, in various other ways, acted and been recognized as such members. Held to be too late to call in question a construction of the vote thus adopted and acted upon by the parties themselves.

In the absence of any record evidence, these facts would have afforded a conclusive presumption that the farm had been legally annexed to the district, and that its occupants were members of it.

[Argued March 11th—decided March 25th, 1887.]

ACTION to recover money paid by the plaintiffs to prevent the sale of their personal property upon a tax-warrant; brought to the Court of Common Pleas of Litchfield County, and heard before *Warner, J.* The defense was that the tax was legally due and that the levy was lawfully made by the defendant, Mattoon, as tax collector; the plaintiffs denying their liability to the tax. The court found the facts and rendered judgment for the plaintiffs. The defendants appealed to this court. The case is sufficiently stated in the opinion.

*J. Huntington* and *A. D. Warner*, for the appellants.

*H. B. Graves*, for the appellees.

BEARDSLEY, J. The plaintiffs in this action seek to recover from the defendant, Mattoon, the amount paid by them to him as collector of taxes for the Center School District of Watertown, for taxes assessed against them by the district; and the single question in the case is, whether the plaintiffs were, on the 2d day of May, 1884, when the tax was laid, subject to taxation as members of the school district.

It is found that, on the 10th day of October, 1808, the school society of the town of Watertown voted—"that Captain John Foot, and whomsoever doth at this time or that shall at any future time occupy his house, they with their respective lists shall be set to the First District." The First District is now known as the Center District. When

this vote was passed John Foot's house stood upon his farm, which did not adjoin the Center District, but was separated from it by an intervening strip of land, the house being about a quarter of a mile from the line of the district. Hubert Scoville, one of the plaintiffs, was his grandson and lived with him. Foot died in 1810, and the father of Hubert then entered into possession of the house and farm, and continued in the same until 1829, when he took down the house and built another upon the farm and near the site of the former one, which he occupied until his death in 1847. Hubert then became the owner of the house and farm, and he and his son, the other plaintiff, have continued to occupy them since.

The first question is as to the proper construction of the vote of 1808. If that operated to annex to the Center District the land upon which the plaintiffs' house stands, it is clear that the plaintiffs are subject to the tax in question. The plaintiffs claim that the vote does not apply to the ground upon which the house occupied by them stands, but that at most it annexed to the district only the house of John Foot and the ground upon which it stood.

Such a construction seems irrational and inconsistent with the language of the vote.

While the language is informal and redundant and somewhat confused, we think it expresses the intention of the society to annex, by force of it, the farm of John Foot to the Center District.

In 1860 the legislature enacted that the records of school societies, "whether informal or otherwise, provided the same can be clearly understood, are hereby validated and confirmed." Gen. Statutes, p. 130, sec. 2.

The vote provides that the persons designated by it shall be set to the district with their respective lists, that is, their taxable property, and no exemption is made of any part of their taxable property. If the vote had provided merely that John Foot and *his list* should be set to the Center District, it could not be presumed that less was intended than the annexation of his farm to the district, especially as that

was probably the most important and prominent part of his taxable property. The case would then have been distinctly within the authority of *Alden* v. *Rounseville*, 7 Met. R., 218, where the court says:—"The formation of a school district by the addition of individuals with their polls and estate to the territorial limits of a district, is in effect permanently adding to the district the real estate of such individuals, and embracing it within the limits of such district."

Connected with the provision as to John Foot and his list, is that relating to the future occupants of his house— that they, with their respective lists, shall be set to the district; and this provision has probably served to create uncertainty as to the meaning of the vote. Upon either construction of the vote it is superfluous, as, whether the farm was annexed or the house only, its occupants would become members of the district. We do not think that it was intended to qualify the provision as to John Foot; so far as it goes it is in harmony with it, and was probably designed to supplement it, and make it plain that the annexation was to be a permanent one. However this may be, it does not overrule the clear expression of the vote, setting John Foot and *his list* to the Center District.

It is apparent that all the parties affected by the vote, the school district, the owners of the Foot farm, and the society itself, have acted upon the understanding that the house, built in 1829, was in the Center District. It is true that in 1868 the Guernsey District, in which before 1808 that part of the farm upon which the present house stands was situated, taxed Hubert and his property, and that he paid the tax, but he did so protesting that he belonged to the Center District, and, with this exception, it does not appear that, since 1808, taxes have been paid by the occupants of the farm to any other than the Center District.

The finding is silent as to taxes before 1829, but since then the taxes upon the house have been paid to the Center District. Since 1829 the children living in the house have attended school in the Center District, and have been enumerated as belonging to it. Hubert has attended the

meetings of the district, and has acted as one of its officers, especially in 1837 and 1838, when he was appointed by the school society one of the district committee, and uniformly claimed to be a member of the district down to about the time when this tax was imposed.

In the year 1883 Hubert and his son, the other plaintiff, alleging that they were members of the district, applied to the clerk to register the voters of the district. The clerk omitted the names of the plaintiffs from the registry. At a subsequent district meeting the plaintiffs offered to vote, but the meeting declined to receive their votes because their names were not on the registry list. It is too late to call in question a construction of the vote which the parties themselves had adopted and acted upon for more than fifty years.

Indeed if there were no record evidence in the case, the facts to which we have referred would, in our opinion, raise a conclusive presumption that the plaintiffs had been legally annexed to, and were members of, the Center District, long before the omission by the clerk of their names from the registry list. In the recent case of *The State ex rel. Halfway River School District* v. *Bradley and others,* this court held that upon evidence of user of certainly not more significant character, and for a shorter period than in the present case, it might properly be found that the lines of a school district had been extended so as to include territory in an adjoining town.

In the case of *Bowen* v. *King,* 34 Vermont R., 156, where it appeared that towns were first empowered to unite in forming a school district in 1808, and a district had in fact existed, composed of the inhabitants of three adjoining towns, for twenty-five years before that, of the organization of which there was no record evidence. The court says (p. 164): "In favor of long-continued user and possession courts have said they will presume everything. Acts of parliament, grants from the crown, surrender of charters, and many other things have been presumed. This district appears to have been in continued existence and action for

more than twenty-five years before 1808, and we may well presume that it was formed by an act of the legislature. The continued acquiescence, not only of the inhabitants of the district, but of all the three towns, cannot be otherwise rationally accounted for.

We do not think that the claim of the plaintiffs that the society had not power to annex to the district territory not contiguous to it, is well founded. The statute in force when the vote was passed, (Revision of 1808, p. 582, sec. 2,) gave societies full power to alter and regulate school districts, and we see no reason why, in the exercise of this plenary authority, they might not annex to the district disconnected territory. In the case of *Alden* v. *Rounseville*, before cited, a similar claim was made, and the court says: —" In the formation of school districts it is not necessary that all the persons within them should be within continuous geographical lines."

There is error in the judgment, and it is reversed, and the case remanded to the Court of Common Pleas.

In this opinion the other judges concurred.